In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1065

CLINT SMITH,

Plaintiff-Appellant,

v.

KENNETH APFEL, Commissioner of Social Security,

Defendant-Appellee.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 1139--Morton Denlow, Magistrate Judge.


Argued July 12, 2000--Decided November 3, 2000



Before Ripple, Rovner, and Williams, Circuit Judges.

Rovner, Circuit Judge. Clint Smith, a sixty-four year old man with an eighth-grade education, applied for disability insurance benefits, alleging that he cannot work because he suffers from arthritis, back pain, an ulcer, liver cirrhosis, and hypertension. An Administrative Law Judge ("ALJ") concluded that Mr. Smith did not have a disability as defined under the Social Security Act, and that his skills and residual functional capacity allowed him to perform a significant number of jobs in the national economy, including that of a forklift operator. The Appeals Council denied Mr. Smith's request for review, and the district court affirmed. On appeal, Mr. Smith (now limiting his claim primarily to arthritis and hypertension) argues that the ALJ made flawed credibility determinations, ignored evidence of his arthritis, and improperly credited the opinion of a consulting physician over that of his own treating physician. Because the ALJ's decision is not supported by substantial evidence, we reverse.

I.

Mr. Smith worked for twenty-four years as a supervisor at a plating company, where he operated a conveyor belt, ran a forklift and completed reports. After he was laid off in 1984,

Mr. Smith worked for the City of Chicago for about three months in 1986 or 1987 while on "public aid," and in 1988 he was awarded disability insurance benefits due to alcoholism.

After a 1996 amendment to the Social Security Act eliminated alcoholism as a basis for obtaining disability insurance, see Pub. L. 104-121, the Social Security Administration ("SSA") notified Mr. Smith that his benefits would cease in January 1997 unless he could show that he continued to be disabled and that his alcoholism was not a contributing factor to his disability. Mr. Smith requested a review of the notification, claiming that he was unable to work because of arthritis throughout his body, a bad back, an ulcer, and cirrhosis of the liver.

According to the treatment notes of Dr. James Baraglia, Mr. Smith's treating physician since 1978, Mr. Smith began in 1985 to complain of pain in his right ankle, left knee, shoulders and back. Dr. Baraglia diagnosed arthritis. X-rays taken in 1987 indicated early degenerative disease and loose calcification in Mr. Smith's left knee and possible calcification or old trauma in his right ankle. A 1989 X-ray revealed no arthritic changes in Mr. Smith's left shoulder. No references to pain or arthritis appear to have been recorded between 1991 and 1995, but in 1996, osteoarthritis was noted under the "problem list" portion of Dr. Baraglia's progress notes for Mr. Smith. Dr. Baraglia prescribed non-aspirin for Mr. Smith's pain, noting that Mr. Smith should avoid prescription "NSAID's" (nonsteroidal anti-inflammatory drugs used to relieve pain, stiffness, and inflammation) because of previous gastrointestinal bleeding. Most recently in November 1996, the doctor prescribed medication for hypertension.

After Mr. Smith requested a review of SSA's notification that his benefits would cease, he was examined by Dr. Sanjay Bharti, a consultative physician, in August 1996. Dr. Bharti observed that Mr. Smith had no limitation of movement except in his right ankle, which was slightly everted (turned out). The doctor noted that Mr. Smith walked on only half of his right foot, but he had a normal gait and could walk on his heels and toes. An X-ray revealed mild to moderate degenerative changes in his right ankle. The rest of Mr. Smith's joint movements, Dr. Bharti observed, were normal, and he was able to "do his daily living without much of a problem." Dr. Bharti noted that Mr. Smith could squat and touch his toes, and was able to put on his clothes relatively quickly. Although Mr. Smith indicated that he had back pain if he bent over, lifted

anything over 50 pounds, or if he sat or stood too long, Dr. Bharti observed that Mr. Smith had full range of motion in his back. He likewise noted normal strength and no sensory deficit to pinprick or touch.

Also in August, state agency physician Dr. Victoria Dow assessed Mr. Smith's residual functional capacity based on Dr. Bharti's examination. Dr. Dow opined that Mr. Smith had mild degenerative joint disease (osteoarthritis) in his ankle and his range of motion was reduced in that area, but that his daily activities were not significantly restricted. She also opined that Mr. Smith had probable degenerative joint disease in the lumbar area, but that he had a normal range of motion in his lower back. Dr. Dow concluded that Mr. Smith could occasionally lift and/or carry up to 50 pounds and frequently lift and/or carry up to 25 pounds, and that he could stand and/or walk and sit (with normal breaks) about six hours in an eight-hour workday.

Four months later in December 1996, Dr. Baraglia completed an assessment of Mr. Smith's physical ability to do work-related activities. Dr. Baraglia estimated Mr. Smith's capabilities more conservatively than Dr. Dow, opining that Mr. Smith could occasionally lift only 20 pounds because of arthritis in his shoulders and left elbow. Further, Dr. Baraglia opined that Mr. Smith could not stand or walk at all in an eight-hour workday, and only occasionally could climb, balance or stoop due to arthritis in his knees. Dr. Baraglia also determined that Mr. Smith had no sitting limitation, but limited Mr. Smith's abilities to reach, handle, push, and pull because of his arthritis.

Two months later in February 1997, Dr. Baraglia completed another questionnaire as to Mr. Smith's physical residual functional capacity, this one opining that Mr. Smith could not walk even one block without rest or severe pain. Dr. Baraglia's February assessment also opined that Mr. Smith could occasionally lift and carry no more than 10 pounds, and indicated that he could stand, walk and sit about four of eight hours intermittently, but no more than one hour at a time. Dr. Baraglia also opined that Mr. Smith could bend and twist only 20 percent of the day, a significant decline from Dr. Bharti's observation that he had full range of motion in his back.

At a hearing before the ALJ in April 1997, Mr. Smith testified that he was unable to work because of arthritis, particularly in his shoulders and neck, and that his knee was "shot." He told the ALJ that he has had an everted right ankle all his life. According to Mr. Smith, he

had severe pain 2 or 3 times a week at night when he was laying down, and took six extra-strength non-aspirin a day to lessen the pain. He testified that he was taking medication for hypertension that controlled his high blood pressure "most of the time," but he still became "woozy" about 2 or 3 times a week when he bent over.

Mr. Smith told the ALJ that he could stand for 20 to 25 minutes at a time, and walk 3 to 4 blocks when he felt like it. He also was able to sit for 25 to 30 minutes before standing up to avoid getting stiff. Mr. Smith testified that he could regularly lift 15 to 20 pounds with one hand and 25 to 30 pounds with both, but had problems lifting anything heavier than 50 pounds. He told the ALJ that he lived alone in a first-floor apartment, and could bathe, feed and dress himself, do his own grocery shopping, do his laundry, cook and clean his apartment.

Also at the hearing, a vocational expert ("VE") testified about the number of jobs available for someone with Mr. Smith's skills and limitations. The VE testified that Mr. Smith's past work was heavy in physical demand and semi-skilled. In response to a hypothetical question posed by the ALJ, the VE explained that if Mr. Smith had the limitations set forth in either of Dr. Baraglia's December 1996 or February 1997 assessments, he would be limited to sedentary work, and in view of his age, eighth-grade education, and past relevant work, there would be no transferability of his skills. The VE testified, however, that although Dr. Dow's assessment would not allow for past relevant work, it would allow for medium exertional work, and that Mr. Smith had skills readily transferable to the position of forklift operator.

After applying the five-step sequential process for evaluating if a claimant has met the burden of establishing disability, see 20 C.F.R. sec. 404.1520, the ALJ concluded that Mr. Smith was not disabled as defined in the Social Security Act. The ALJ found that Mr. Smith had not been gainfully employed since January 1985. The ALJ next determined that Mr. Smith had a severe "inverted" right foot, hypertension without evidence of end-organ damage, and mild hearing loss in the left ear;/1 however, he did not have an impairment or combination of impairments listed in or medically equal to one listed in 20 C.F.R. pt. 404, subpt. P, app. 1. The ALJ further concluded that Mr. Smith was unable to perform his past relevant work as a planing factory supervisor, but his residual functional capacity allowed him to perform medium work, except for lifting in excess of 50 pounds occasionally and

25 pounds frequently, or working in environments where he would be exposed to more than mild noise levels. The ALJ found that although his additional nonexertional limitations precluded Mr. Smith from performing the full range of medium work, there were a significant number of jobs in the national economy that he could perform, notably that of a forklift operator.

In analyzing Mr. Smith's capacity to work, the ALJ discredited Mr. Smith's complaints of pain. The ALJ observed, for instance, that his claimed levels of pain and functional limitation were not borne out by the clinical signs and findings. The ALJ also noted inconsistencies within Mr. Smith's testimony as well as inconsistencies between his testimony and statements he made to Dr. Bharti. The ALJ also discounted Mr. Smith's treating physician's (Dr. Baraglia) two assessments of Mr. Smith's capacity to work because they were mutually inconsistent and unsupported by the clinical signs and findings, and concluded that the doctor was "leaning over backwards to favor his patient."

Mr. Smith appealed the ALJ's adverse decision. The Appeals Council denied Mr. Smith's request for review. Mr. Smith then filed a complaint in the district court. After the parties filed cross-motions for summary judgment, a magistrate judge, presiding with the parties' consent, granted the Commissioner's motion and denied Mr. Smith's. The magistrate judge concluded that substantial evidence in the record supported the ALJ's findings.

II.

On appeal, Mr. Smith confines his claimed disability to arthritis-induced pain in his right ankle, knees, shoulders and elbow, as well as dizziness caused by hypertension. He argues that the ALJ's decision is not supported by substantial evidence because the ALJ made flawed credibility determinations, erroneously made an independent medical determination that he did not suffer from arthritis, and failed to properly weigh the medical opinions pursuant to 20 C.F.R. sec. 404.1527(d). We agree.

Because the Appeals Council found no basis for further review, the ALJ's findings constitute the final decision of the Commissioner of the SSA. See Luna v. Shalala, 22 F.3d 687, 689 (7th Cir. 1994). We will affirm an ALJ's decision only if it is supported by substantial evidence, which is evidence "a reasonable mind might accept as adequate to support a conclusion." See Powers v. Apfel, 207 F.3d 431, 434 (7th Cir. 2000) (quoting Diaz v. Chater, 55 F.3d 300, 305 (7th Cir. 1995)).

We are troubled by the ALJ's credibility findings in this case. The ALJ discounted the functional limitations set forth by Mr. Smith's treating physician, Dr. Baraglia, because they were "not based on persuasive or even reasonable evidence." In particular, the ALJ pointed out that Dr. Baraglia failed to order X-rays to confirm the presence of arthritis. The failure to order X-rays, however, is not an appropriate basis to wholly discredit Dr. Baraglia's opinion. The ALJ disregarded evidence that as early as 1987, X-rays had revealed that Mr. Smith was experiencing the onset of degenerative disease in his knee. Over the course of nearly ten years, this "early" degeneration would presumably have advanced, as X-rays of Mr. Smith's ankle taken in 1987 and 1996 had indicated. If the ALJ was concerned that the medical evidence was insufficient to determine whether Mr. Smith was disabled, he should have ordered more recent X-rays. See 20 C.F.R. sec. 404.1517.

Although a claimant has the burden to prove disability, the ALJ has a duty to develop a full and fair record. See Thompson v. Sullivan, 933 F.2d 581, 585 (7th Cir. 1991). Failure to fulfill this obligation is "good cause" to remand for gathering of additional evidence. Id. at 586. We fail to see how the ALJ could have properly assessed the extent of Mr. Smith's arthritis without more updated X-rays. Given that the most current X-rays of Mr. Smith's knee were taken nearly ten years before the hearing and revealed the early stages of degenerative disease, it was incumbent upon the ALJ to order additional X-rays to ascertain the extent of the degeneration of Mr. Smith's knee. See id. at 587 ("[g]iven that the last x-rays of [the claimant's] spine were taken in December of 1978, the ALJ's duty to sufficiently develop the record [by 1987] would suggest the need to order additional x-rays or other imaging tests to ascertain the extent of degeneration of [the claimant's] back and neck"). For the same reason, we disagree with the ALJ that the absence of objective clinical findings was a sufficient basis not to afford Dr. Baraglia's opinion controlling weight. See 20 C.F.R. sec. 404.1527(d)(2).

Mr. Smith also argues that the ALJ failed to explicitly consider the effect of his hypertension-induced dizziness on his ability to work. By November 1996, Mr. Smith's blood pressure had risen to such a degree that his doctor had prescribed medication. The ALJ found that Mr. Smith suffered from "hypertension without evidence of end-organ damage," yet never commented as to any less damaging but nonetheless significant effects of hypertension, if any, on

Mr. Smith's suitability as a forklift operator. Indeed, there is no indication that the VE ever considered dizziness as a possible impediment to safe operation of a forklift; the ALJ inquired only as to Mr. Smith's employability in view of the functional limitation assessments provided by Drs. Baraglia and Dow. The ALJ's failure to consider the evidence of dizziness alone precludes us from "evaluat[ing] . . . whether substantial evidence existed to support the ALJ's finding," see Herron v. Shalala, 19 F.3d 329, 334 (7th Cir. 1994) (remanding case where ALJ failed to consider evidence relating to claimant's hand impairment), but we are also troubled by the ALJ's failure to address the VE's testimony that a forklift required "frequent to constant" use of his right ankle to operate the foot controls, in view of Mr. Smith's most recent X-ray indicating mild to moderate degeneration in that precise area. See DeFrancesco v. Bowen, 867 F.2d 1040, 1044 (7th Cir. 1989) (remand warranted where ALJ deemed claimant's occasional confusion of brake with gas pedals due to numb feet only slight restriction on ability to work). An ALJ may not simply select and discuss only that evidence which favors his ultimate conclusion. See Herron, 19 F.3d at 333. Rather, an ALJ's decision must be based upon consideration of all the relevant evidence. Id. Accordingly, we REVERSE the district court's decision granting summary judgment in favor of the Commissioner and REMAND the case for further consideration consistent with this opinion.

/1 In August 1986, Mr. Smith was diagnosed with moderate sensoneural hearing loss in his right ear, with normal hearing at 4 kilohertz. Mr. Smith testified at the hearing that he has a problem with "roaring" in his right ear, but that he still could hear the TV, radio and conversation.

RIPPLE, Circuit Judge, dissenting. In this appeal, we must consider whether the ALJ reasonably found Mr. Smith capable of performing a significant number of jobs in the national

economy at the medium exertional level and therefore not disabled within the meaning of the Social Security Act. Mr. Smith contends that the ALJ made flawed credibility determinations and improperly credited the opinion of a consulting physician over that of his treating physician. The majority agrees with Mr. Smith and therefore reverses the decision to deny him benefits. Because I believe that the ALJ's decision is supported by substantial evidence, I respectfully dissent.

I

In my view, the majority opinion fails to give sufficient deference to the findings of the ALJ./1 It is axiomatic that we will affirm the ALJ's decision as long as it is supported by substantial evidence. See Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994); Jones v. Shalala, 10 F.3d 522, 523 (7th Cir. 1993); see also 42 U.S.C. sec. 405(g) (requiring that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). Therefore, the question before this court is whether the ALJ's findings were supported by substantial evidence. See Books v. Chater, 91 F.3d 972, 977 (7th Cir. 1996); Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995). Substantial evidence is defined as no more than "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Books, 91 F.3d at 977-78 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Given the deferential standard of review, Mr. Smith faces an uphill battle in his attempt to overturn an ALJ's finding that he is not disabled. See DeFrancesco v. Bowen, 867 F.2d 1040 (7th Cir. 1989). "Although we review the entire record, we may not decide the facts anew, reweigh the evidence, or substitute our own judgment for that of the [ALJ]." Herron, 19 F.3d at 333.

II

Substantial evidence supports the ALJ's finding that Mr. Smith was not credible in his pain complaints. At the beginning of the discussion, we must recall that the ALJ's credibility determination is entitled to special deference because the ALJ is in the "best position to see and hear the witnesses and assess their forthrightness." Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000). Accordingly, an ALJ's credibility determination will not be disturbed unless the claimant can show that it was patently wrong. See Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995). In this case, the ALJ based his credibility determination on a number of facts and observations. First, the ALJ concluded that the level of pain and functional limitations that

Mr. Smith complained of were not supported by the clinical signs and findings. See A.R.27. Although Dr. Baraglia noted Mr. Smith's subjective complaints of pain since 1985, his treatment notes did not contain objective medical data or record any functional limitations. Moreover, Dr. Bharti observed that Mr. Smith had no limitation of strength or motion anywhere except his right ankle. Although Dr. Bharti noted that Mr. Smith's ankle was "slightly everted and there was a restriction in flexion and extension at that joint," he also found that Mr. Smith was still able to squat, touch his toes, walk normally and to perform his daily activities. See A.R.199.

It is true that, under the regulatory scheme, an ALJ may not reject a claimant's statements concerning the intensity or persistence of his symptoms solely because they are not fully supported by medical evidence. See 20 C.F.R. sec. 404.1529(c)(2); see also Knight v. Chater, 55 F.3d 309, 314 (7th Cir. 1995). However, it is also true that an ALJ may consider the lack of medical evidence as probative of the claimant's credibility. See Powers, 207 F.3d at 435 ("The discrepancy between the degree of pain attested to by the witness and that suggested by the medical evidence is probative that the witness may be exaggerating her condition."). Clinical signs and laboratory findings are useful indicators of disability and can assist the ALJ in making reasonable conclusions about the intensity and persistence of the claimant's symptoms and the effect those symptoms may have on the claimant's ability to work. See 20 C.F.R. sec. 404.1529(c)(2).

More importantly, the ALJ in this case did not base its decision on the absence of objective medical evidence alone. The ALJ also found numerous inconsistencies within Mr. Smith's testimony and inconsistencies between his testimony and the statements he made to Dr. Bharti. For example, the ALJ noted that "while the claimant first said that he can lift only 30 pounds, he then admitted that he told the consulting physician that his symptoms only worsen when he lifts up to 50 pounds." See A.R.27. Similarly, the ALJ was troubled by Mr. Smith's inconsistent testimony regarding his ability to stand and walk. See id. The ALJ was also disturbed by Mr. Smith's conflicting explanations for leaving his job. The ALJ noted that Mr. Smith testified that he was laid off, but that he told the consulting physician he quit working because of problems associated with his arthritis. See id. In addition to these inconsistencies, the ALJ also observed that Mr. Smith's pain complaints were inconsistent with his minimal, non-prescription treatment (6 non-

aspirin a day), his ability to perform his daily activities without much difficulty, and his appearance and demeanor at the hearing. See A.R.27, 30. Based on the evidence of record, the ALJ's determination that Mr. Smith's subjective complaints were less than credible was not patently wrong. See Knight, 55 F.3d at 314 ("An ALJ may discount subjective complaints of pain that are inconsistent with the evidence as a whole.").

III

Likewise, the ALJ's decision to credit the opinion of Dr. Bharti over that of Dr. Baraglia was supported by substantial evidence. Title 20 of the Code of Federal Regulations, sec. 404.1527(d), sets forth how an ALJ should weigh various medical opinions. Under the regulation, opinions from treating sources are generally given great weight. See 20 C.F.R. sec. 404.1527(d)(2). This policy is based upon the agency's belief that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)." See id. Accordingly, if the ALJ finds that the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," it will be given controlling weight. See id. But when the opinion of a treating physician is not supported by medical evidence and is inconsistent with the substantial evidence in the claimant's record, the ALJ will not give the opinion controlling weight. See id. Instead, the ALJ will determine independently the weight to give the opinion on the basis of the following factors: the length, frequency, nature and extent of the treatment relationship; the degree to which the medical signs and laboratory findings support the opinion; the consistency of the opinion with the record as a whole; and the specialization of the physician. See 20 C.F.R. sec. 404.1527(d)(2), (3), (4) & (5).

In this case, the ALJ was not persuaded by Mr. Smith's description of his symptoms and limitations and found that Dr. Baraglia's opinion, which was largely based upon Mr. Smith's subjective complaints, was entitled to little weight. Upon review of all the evidence in the record, the ALJ decided to credit the opinion of Dr. Bharti, the consulting physician, over that of Dr. Baraglia. The ALJ was entitled to make this determination. See Reynolds v. Bowen, 844 F.2d 451, 455 (7th Cir. 1988) ("[W]hile the treating physician's opinion is important, it is

not the final word on a claimant's disability."); accord Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995) ("[A] treating physician's opinion is not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data.") (quotations and citations omitted). Nothing in the regulatory scheme or the precedent of this court "mandates that the opinion of a treating physician always be accepted over that of a consulting physician, only that the relative merits of both be duly considered." Books, 91 F.3d at 979. In this case, the ALJ took into account the relevant criteria in determining the weight to give Dr. Baraglia's opinion and provided sufficient explanation for his decision. See 20 C.F.R. sec. 404.1527(d)(2) (requiring the ALJ to provide good reasons for the weight given to the claimant's treating physician).

The ALJ recognized that Dr. Baraglia was able to observe the claimant over a prolonged period, see Stephens v. Heckler, 766 F.2d 284, 288 (7th Cir. 1994), and noted that the opinion of a treating physician is normally given great weight. See A.R.28. Nevertheless, the ALJ concluded that there was substantial reason to believe that Dr. Baraglia's opinion was not credible. Id. Specifically, the ALJ rejected Dr. Baraglia's assessment of Mr. Smith's capacity to work because (1) it was not supported by clinical signs and findings, (2) it was internally inconsistent, and (3) it was inconsistent with the other substantial evidence in Mr. Smith's record. See id.

First, the ALJ found that Dr. Baraglia's opinion was not based on objective medical evidence. See A.R.26 (stating that Dr. Baraglia's assessment of Mr. Smith's residual functional capacity "shows no objective medical basis in clinical signs, findings or abnormalities by which to substantiate the indicated restrictions"). A thorough review of Mr. Smith's case record reveals that this finding is essentially correct. Although Dr. Baraglia diagnosed severe arthritis, his treatment notes contain little more than Mr. Smith's subjective complaints of pain. The only X-rays contained in Dr. Baraglia's reports were from 1987 and 1989, and they revealed only minimal or non-existent degenerative changes (with the exception of Mr. Smith's right ankle), and Dr. Baraglia's treatment notes did not indicate any restrictions on Mr. Smith's functional capacity due to his condition. At minimum, the absence of laboratory findings from Dr. Baraglia's reports is a factor that the ALJ could consider in determining the weight to give Dr. Baraglia's opinion. See 20 C.F.R. sec. 404.1527(d)(3) ("The more a medical

source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion."); see also Henderson v. Apfel, 179 F.3d 507, 514 (7th Cir. 1999) ("An ALJ need not give controlling weight to a treating physician's opinion if it is not supported by objective clinical findings."); Nelson v. Apfel, 131 F.3d 1228, 1237 (7th Cir. 1997) ("The ALJ should consider and discuss all medical evidence that is credible, supported by clinical findings, and relevant to the question at hand."); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("The weight given a physician's statement depends upon the extent to which it is supported by medically acceptable clinical and laboratory diagnostic techniques.") (quotations and citations omitted); accord Cutlip v. Secretary of Health & Human Servs., 25 F.3d 284, 287 (6th Cir. 1994) (per curiam) ("[The treating physician's] opinions are only accorded great weight when they are supported by sufficient clinical findings.").

Second, the ALJ found Dr. Baraglia's opinion to be internally inconsistent. Within a two month period, Dr. Baraglia completed two written assessments of Mr. Smith's functional capacity. Curiously, the latter assessment suggested that Mr. Smith's condition had worsened dramatically in some ways, but improved (almost miraculously) in others. For example, in the December 1996 assessment, Dr. Baraglia indicated that there was no limitation in the claimant's ability to sit for prolonged periods, see A.R.228, but in the February 1997 assessment, Dr. Baraglia indicated that Mr. Smith could only sit for about four hours, see A.R.242. Additionally, Dr. Baraglia's February assessment noted that Mr. Smith could occasionally lift and carry no more than 10 pounds, see id., an assessment 50% less than the 20 pound-estimate he made only two months earlier, see id. at 227. At the same time, Dr. Baraglia opined in the first assessment that Mr. Smith could not stand or walk any hours out of an eight-hour work day, see A.R.228, but in the latter assessment, he indicated that Mr. Smith could stand or walk four hours out of an eight-hour work day with normal breaks, see A.R.242.

Significantly, these discernible discrepancies were not resolved by Dr. Baraglia's treatment notes. He provided no explanation for his changed impression of Mr. Smith's functional capacity; indeed, Dr. Baraglia's treatment notes from January 1997, one month before he completed the second assessment, indicated that Mr. Smith was "doing well" and that his blood pressure was stable. See A.R.26.

Finally, the ALJ also found Dr. Baraglia's

assessment to be inconsistent with the other substantial evidence in Mr. Smith's record. Dr. Bharti, who examined Mr. Smith in August 1996, noted that the claimant complained of arthritis in his knees, ankles, and shoulders, but indicated that his examination revealed that the claimant had no limitation of motion, except in his right ankle. See A.R.199. Although Dr. Bharti found his ankle to be slightly everted, the rest of Mr. Smith's joint movements were normal. See id. Dr. Bharti further indicated that Mr. Smith had normal strength in all of his limbs, no sensory deficit to pinprick or touch, and positive straight leg raising at 70 degrees. See A.R.198. As to the limitations presented by Mr. Smith's right ankle, Dr. Bharti noted that the claimant walked on only half of his right foot, but that he had normal gait and could walk on his heels and toes. See id. Based on his findings, an X-ray was taken of Mr. Smith's ankle, which revealed only mild to moderate degenerative changes. See A.R.201. Not only were Dr. Baraglia's restrictive assessments of Mr. Smith's functional capacity inconsistent with Dr. Bharti's overall findings, but they also failed to mention the one objective impairment Mr. Smith apparently has. In the December 1996 assessment, Dr. Baraglia was asked to explain the medical findings that, in his opinion, prevent Mr. Smith from standing or walking. In response to this question, Dr. Baraglia listed only "bilateral knee arthritis." See A.R.228. Similarly, in the February 1997 assessment, he was asked to characterize the location and nature of Mr. Smith's pain. Again, Dr. Baraglia failed to mention Mr. Smith's right ankle; he stated only "severe knee and shoulder pain." See A.R.240.

Furthermore, Dr. Baraglia's restrictive assessments appear to contradict the claimant's own testimony. Dr. Baraglia noted dramatic changes in Mr. Smith's condition between December 1996 and February 1997. Mr. Smith testified at the hearing, however, that his condition had not changed between December 1996 and the date of the hearing in April 1997. Nor do Dr. Baraglia's treatment notes reveal the reason for the decline; his most recent examination of Mr. Smith appears to have been in November 1996, and no complaints of arthritic pain or limitation of movement were recorded. See A.R.224. Similarly, Dr. Baraglia indicated (in the February 1997 assessment) that Mr. Smith could never carry more than ten pounds. Mr. Smith, however, testified that he could carry up to thirty pounds, and that he regularly carried groceries weighing fifteen to twenty pounds. See A.R.27. And although Mr. Smith testified in April 1997 that he regularly walks four blocks (and that walking sometimes makes his symptoms better), Dr. Baraglia

indicated in December 1996 that he could not stand or walk at all in an eight hour day, and in February 1997 indicated that Mr. Smith was incapable of walking one block without rest. See A.R.241.

In light of these inconsistencies and the "paucity of objective medical evidence," the ALJ reasonably could have determined that the evidence as a whole did not lend credibility to Dr. Baraglia's restrictive assessment of Mr. Smith's functional capacity. See A.R.28. As this court has noted, and the ALJ was obviously mindful, a claimant's treating physician may be biased in favor of the claimant. See A.R.28-29; see also Butera v. Apfel, 173 F.3d 1049, 1056 (7th Cir. 1999); Books, 91 F.3d at 979; Micus v. Bowen, 979 F.2d 602, 608 (7th Cir. 1992); Stephens, 766 F.2d at 289 ("The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability."). Or just as plausibly, the treating physician "may lack an appreciation of how one case compares with other related cases." Stephens, 766 F.2d at 289. In the end, when there are conflicting medical opinions, "it is up to the ALJ to decide which doctor to believe--the treating physician who has experience and knowledge of the case, but may be biased, or . . . the consulting physician, who may bring expertise and knowledge of similar cases--subject only to the requirement that the ALJ's decision be supported by substantial evidence." Books, 91 F.3d at 979 (quoting Micus, 979 F.2d at 608).

IV

The majority also concludes that the ALJ's decision is not supported by substantial evidence because he had a duty to supplement the record with more recent X-rays of Mr. Smith's knees and shoulders (in addition to his right ankle). Based on the facts of this case, I cannot accept this conclusion because it is contrary to the Secretary's regulations and the weight of authority in this circuit. Although "[i]t is a basic obligation of the ALJ to develop a full and fair record," Smith v. Secretary of Health, Education and Welfare, 587 F.2d 857, 860 (7th Cir. 1978), how much evidence to gather is a subject on which this court "generally respect[s] the [ALJ's] reasoned judgment." Luna v. Shalala, 22 F.3d 687, 692 (7th Cir. 1994). If the ALJ is able to weigh the record evidence and determine whether the claimant is disabled based on that evidence, then he is not required to obtain additional evidence. See Henderson, 179 F.3d at 513.

I respectfully submit that majority opinion takes this "basic obligation" too far. "[I]t was [Mr. Smith's] duty, under 20 C.F.R. sec. 404.1512(a), to bring to the ALJ's attention everything that shows that he is disabled." Luna, 22 F.3d at 693. Accordingly, Mr. Smith was obligated to "furnish medical and other evidence that the ALJ [could] use to reach conclusions about his medical impairment and its effect on his ability to work on a sustained basis." Id. In this case, the ALJ probed into all of the relevant areas and examined all of the evidence before him. X-rays revealed minimal degenerative changes in Mr. Smith's knee in 1987 and no arthritic changes in his shoulder in 1989. See A.R.158, 159. Also, Dr. Bharti observed in 1996 that Mr. Smith had no limitation of motion anywhere but his right ankle. See A.R.199. Furthermore, Mr. Smith had told Dr. Bharti that his knee did not pose much of a problem, and that his symptoms generally arose only if he bent over or tried to lift more than 50 pounds. See A.R.196. Dr. Bharti likewise observed that Mr. Smith could squat, touch his toes, and walk on his toes and heels. See A.R.198. On the basis of Dr. Bharti's examination, X-rays were taken of Mr. Smith's right ankle, but no other X-rays were ordered. See A.R.201. The ALJ was not obligated to order any other X-rays because the evidence before the ALJ was sufficient for him to assess Mr. Smith's alleged disability without them. See 20 C.F.R. sec. 404.1527(c). The ALJ reasonably could have concluded that, if Mr. Smith's condition had been serious enough to warrant additional X-rays (in addition to his right ankle), then his treating physician would have ordered these X-rays.

Notwithstanding this evidence and the reasonable conclusions that could be drawn from it, the majority believes that the ALJ failed to satisfy his obligation. The majority relies primarily upon Thompson v. Sullivan, 933 F.2d 581 (7th Cir. 1991) for this proposition. Thompson, however, is not altogether relevant to this case because it applies the heightened duty that an ALJ owes to unrepresented claimants. See Thompson, 933 F.2d at 585 ("[W]here the disability benefits claimant is unassisted by counsel, the ALJ has a duty scrupulously and conscientiously [to] probe into, inquire of, and explore for all the relevant facts.") (quotations and citations omitted). In Thompson, this court recognized that the ALJ's obligation is greater when the claimant is unrepresented and unfamiliar with the hearing process. See id. at 586 ("The special duty assigned to the ALJ 'requires, essentially, a record which shows that the claimant was not prejudiced by lack of counsel.'") (citing Smith v. Schweiker, 677 F.2d 826, 829 (11th Cir.

1982)). But in the present case, Mr. Smith was represented by counsel throughout the hearing process; therefore, the heightened obligation does not apply.

Moreover, the facts in Thompson are very different from the facts in this case. First, the claimant in Thompson was never examined by a consultative physician. Rather, a state agency physician reviewed the claimant's medical records and assessed his residual functional capacity on this basis alone. Next, the ALJ failed to pose a single question regarding Thompson's consumption of alcohol or how drinking affected his activities, even though the medical records indicated possible alcohol abuse. Furthermore, the ALJ found Thompson's complaints to be "generally credible," yet found that Thompson was not disabled based on the medical evidence. Thompson, 933 F.2d at 587. Given these facts, this court correctly concluded that "[t]he ALJ should have taken additional steps to develop the record fully and fairly." Id. Specifically, we noted that "[a]t the very least, more thorough questioning of Thompson would have been appropriate." Id. On the facts presented by Thompson, we also noted that additional examinations "would have contributed to better development of the record," but we did not hold that the ALJ was required to order additional X-rays. Id. In light of these differences, I believe that the majority's reliance on Thompson is misplaced. Accordingly, the ALJ was not obligated to order additional X-rays and he fulfilled his duty to fully and fairly develop the record.

V

I cannot accept the majority's conclusion that the ALJ failed to take into account the effect of Mr. Smith's complaints of dizziness due to hypertension on his ability to work. Although the ALJ did not address in his written opinion the effect of his hypertension, we have repeatedly noted that the ALJ is not required to evaluate in writing every piece of evidence submitted. See Books, 91 F.3d at 980. "All we require is that the ALJ sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . [and to enable] us to trace the path of the ALJ's reasoning." Id. (quotations and citations omitted). "[T]he weight to be given to this evidence remained within the discretion of the ALJ." Diaz, 55 F.3d at 309.

Here, there was substantial evidence from which the ALJ could conclude that Mr. Smith's subjective complaints of dizziness exaggerated his condition. Initially, I note that there is

nothing in the ALJ's findings that would limit the ALJ's credibility assessment of Mr. Smith to his complaints of arthritic pain. The ALJ found that "[t]he claimant's subjective physical complaints [were] not credible based on the clinical signs and findings, which do not reasonably establish the presence of underlying impairments, either alone or in combination, that could reasonably produce pain and functional limitation of the nature and location alleged." A.R.30.

Additionally, Dr. Bharti noted in August 1996 that there was no evidence of complications arising from Mr. Smith's history of hypertension; in fact, Mr. Smith told the doctor that "it had settled down." A.R.196-97. Likewise, Dr. Baraglia's treatment notes did not indicate any complaints of dizziness since 1989; nor did the doctor's December 1996 and February 1997 assessments mention dizziness as a basis for Mr. Smith's limitations. Furthermore, Mr. Smith testified at the hearing that the medication he was taking controlled his blood pressure most of the time. See A.R.69. When asked how his high blood pressure prevented him from working, Mr. Smith responded that on average, he would become dizzy two or three times a week when he bent over. See id. Evaluating the evidence as a whole, the ALJ reasonably could have concluded that Mr. Smith's hypertension did not significantly impair his ability to work.

VI

Finally, the ALJ's finding that any pain or limitation of motion in Mr. Smith's ankle would not prevent him from performing medium work was supported by substantial evidence. There is no indication that the ALJ failed to consider Mr. Smith's most recent X-ray indicating mild to moderate degeneration; indeed, the ALJ expressly found that Mr. Smith's right foot was severely inverted and that he suffered from "slight sclerosis." See A.R.27. Nevertheless, the ALJ was entitled to give credence to Dr. Bharti's report, which indicated that Mr. Smith's ambulation was normal despite his impairment. Furthermore, the ALJ properly noted that the claimant had admitted that "this long-standing eversion of the right foot did not prevent him from doing his past work which required prolonged periods of standing and walking." A.R.27. Given this evidence, I cannot conclude that the ALJ's conclusion was patently wrong, even if we would have reached a different conclusion.

Conclusion

Because I believe that the ALJ's conclusion is

supported by substantial evidence, and that reasonable minds could differ concerning whether Smith is disabled, I would affirm the ALJ's decision to deny him benefits.

/1 Because the Appeals Council found no basis for further review, the ALJ's findings constitute the final decision of the Commissioner of the SSA. See Herron v. Shalala, 19 F.3d 329, 332 (7th Cir. 1994).