NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 7, 2019
Decided September 6, 2019

**Before**

DANIEL A. MANION, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 18-3559

| | |
|---|---|
| DARIUS T. WILLIAMS, <br>     *Plaintiff-Appellant*, <br><br> *v*. <br><br> ANDREW M. SAUL, <br> Commissioner of Social Security, <br>     *Defendant-Appellee*. | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. <br><br> No. 1:16-cv-11335 <br><br> Michael T. Mason, <br> *Magistrate Judge*. |

**O R D E R**

Darius Williams, a 25-year-old with an IQ of 64, challenges the termination of his social-security benefits upon his turning 18. After Williams's pro se hearing, an administrative law judge decided that Williams could perform simple, repetitive work consisting of no more than one- or two-step tasks such as the work of a hand packer, assembler, or sorter. Despite considerable evidence that Williams had the mathematical acumen of a second-grader, however, the ALJ did not ask the vocational expert whether the more sophisticated math requirements listed in the Dictionary of Occupation Titles were consistent with what the jobs require in practice. Because the ALJ did not resolve this conflict, his step-five finding is unsupported by substantial evidence, and we therefore remand the case for a new hearing.

**Background**

At age nine, Williams was diagnosed with learning and phonological disorders, as well as a Full-Scale IQ score of 59, and he began receiving social security benefits. After Williams turned 18, the Social Security Administration sent him for an evaluation with Dr. Robert Prescott, a psychologist, to determine whether Williams qualified for benefits under the adult standard. Dr. Prescott diagnosed Williams with a learning disability, a phonological disorder, and "[b]orderline intellectual functioning," and commented that his IQ score of 64[1] was "fairly consistent" with the score of 59 that he had received at age nine. Dr. Prescott also commented that if Williams was awarded benefits, "he would not be an adequate manager" of his funds. The Commissioner determined, based on Dr. Prescott's evaluation, that Williams's condition was "no longer disabling" because he had "the ability to do unskilled work" despite some functional limitations.

Williams appealed that determination. At his first hearing in December 2013, an ALJ informed Williams of his right to representation. The ALJ explained that "[t]here are two categories of representation; those people who represent you for free and those people who will charge you money." The ALJ next explained that anyone who charged him for representation was "entitled to 25% of any past due benefits; nothing in the future" and that "[i]f they lose, they get nothing." The ALJ provided Williams with a waiver-of-representation form and continued the hearing to another date. He also explained to Williams that if he "c[a]me back" and "d[idn't] have a representative" that they would "get to the truth of the matter" together. Williams signed a form acknowledging that the ALJ had postponed his hearing so that he could "seek to obtain a representative," that he understood he was "entitled to have only one postponement," and that if he did not "have a representative by the time of the next scheduled hearing," he must "be prepared to proceed with the hearing without a representative."

Williams missed his next hearing, but after the ALJ found good cause for his absence, it was rescheduled for May 2015. In the time leading up to this hearing (between April 2013 and March 2015), the Commissioner mailed Williams six notices,

---

[1] A Full-Scale IQ under 70 reflects "Intellectual Disability," according to the Wechsler Adult Intelligence Scale-IV. Wayne Silverman, et al., *Stanford-Binet & WAIS IQ Differences and Their Implications for Adults with Intellectual Disability (aka Mental Retardation)*, NATIONAL INSTITUTES OF HEALTH PUBLIC ACCESS. March 1, 2011, at 1–2, 6–7, 10, https://www.ncbi.nlm.nih.gov/pubmed/20401180.

some of which included a pamphlet entitled "Your Right to Representation" that listed organizations that could help him find representation and explained his right to an attorney, the fee structure, and the benefits of representation in disability proceedings. Williams acknowledged receipt of at least four notices.

In preparation for the hearing, the ALJ scheduled Williams for a second evaluation with Dr. Prescott. Dr. Prescott administered tests and diagnosed Williams with a learning disability, depression, and "[b]orderline intellectual functioning, per history." On the math tests, Williams stated that "2+3=6" and "was unresponsive for 7+8." He correctly responded that "2x3=6" but could not calculate "7x8." When Dr. Prescott asked Williams to do serial threes, Williams asked for directions three times, then "responded by saying 'skip.'" He was able to subtract two-digit numbers "sometimes when carrying was not involved" but could not perform division. Dr. Prescott concluded that Williams's math skills were at a second-grade level. Dr. Prescott further noted that Williams did not appear to be making his "very best effort" and that the test scores "may slightly underestimate his level of functioning."

At the hearing, the ALJ asked Williams if he remembered what the ALJ had told him about his right to representation at the December 2013 hearing, and Williams responded that he did. Williams also testified that he could read the notice of hearing that the Commissioner sent him. The ALJ asked "So you're going to go ahead and proceed today without representation?" Williams said "Yes, sir."

The ALJ then heard testimony from Williams and his aunt (his primary caretaker). Williams testified that in high school he was in special education and that he struggled with math. When the ALJ asked Williams about his meeting with Dr. Prescott, Williams said that the meeting upset him because Dr. Prescott was impatient and became frustrated when Williams did not answer the test questions quickly. Williams's aunt testified that Williams had been offered a job with a local pipe-cutting company, but that the owner had retracted the offer because Williams could not pass a math test.

Next, the ALJ heard testimony from Dr. Ellen Rozenfeld, a psychologist serving as the medical expert. Dr. Rozenfeld testified that she had reviewed the exhibits and listened to the testimony but had never examined Williams. She commented that the "records clearly support … that he has cognitive limitations," which fell into the intellectual-disability range. She noted that despite Williams's IQ of 64, Dr. Prescott had not diagnosed Williams with a cognitive impairment or an intellectual disability. Stating that math was Williams's "weakest area," Dr. Rozenfeld opined that Williams

nevertheless had "adequate attention and concentration" to "handle one and two-step tasks" with "end-of-day [production] goals." Although Williams likely could not work in a job with "sustained general public contact," she opined, he could adequately communicate with supervisors and coworkers so long as the work was not fast-paced.

The ALJ also consulted a vocational expert who had reviewed Williams's records and listened to the testimony. The ALJ asked if jobs existed for someone who "would be limited to simple, routine, repetitive … one to two-step tasks" with "relaxed or flexible production rate requirements and no sustained verbal contact with the public." The VE answered that someone with those restrictions could work as a hand packer (DOT 920.687-066), an assembler (DOT 739.687-186), or a sorter (DOT 929.687-022). Each of these jobs were "bench jobs" with quotas but were "not as fast-paced or as strict" as jobs on an assembly line and would allow Williams to have time to collect himself throughout the day.

Following the five-step evaluation process, *see* 20 C.F.R. § 416.920, the ALJ determined that Williams was not disabled. The first step does not apply to redetermining disability at age 18, *see* 20 C.F.R. § 416.987(b), so the ALJ began by concluding that Williams's learning disability and depressive disorder were severe impairments (step two) and that his impairments did not meet or medically equal a listing for a presumptively disabling condition (step three). Next, the ALJ concluded at step four that Williams had the residual functional capacity to perform "work consisting of simple, routine, and repetitive, one to two step tasks" with "flexible production rate requirements" and no "sustained verbal contact with the public." In reaching his decision, the ALJ gave "greatest weight" to the opinion of Dr. Rozenfeld (the medical expert) and "good" weight to that of Dr. Prescott (the consulting examiner). The ALJ assigned less weight to the testimony of Williams's aunt. Finally the ALJ credited the VE's testimony, determined that it was "consistent with the information contained in the *Dictionary of Occupational Titles*," and concluded that Williams could work as a hand packer, assembler, or sorter (step 5). The Appeals Council denied Williams's request for review, and the district court upheld the denial of benefits.

## Analysis

On appeal, Williams first argues that he did not validly waive his right to representation. Though the ALJ explained the right to Williams in December 2013, Williams maintains that the ALJ should have repeated this explanation at his hearing in May 2015 in view of the long delay and considering the record evidence of Williams's cognitive impairments and difficulty with comprehension.

A social-security claimant has a statutory right to counsel at a disability hearing, but he may waive it if he is properly informed. 20 C.F.R. § 416.1500; *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994). To ensure a valid waiver, an ALJ must "explain to the *pro se* claimant (1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." *Id*. In *Jozefyk v. Berryhill*, we upheld a claimant's waiver after he had received written notice via the "Your Right to Representation" pamphlet and a brief oral reminder that he had a right to counsel at the hearing. 923 F.3d 492, 496–97 (7th Cir. 2019).

Here, Williams validly waived his right to counsel. He received both an oral explanation of his right at his 2013 hearing and several later written notices, including the "Your Right to Representation" pamphlet. The ALJ explained the various fee structures that were available; the pamphlet Williams received repeated this information and added details about the ways that an attorney could help him. Moreover, Williams signed a form acknowledging that he understood that the ALJ had continued the hearing to allow him to find an attorney, he acknowledged receiving some of the written notices, and he agreed to proceed without counsel at the May 2015 hearing. These circumstances were sufficient to support a valid waiver. *See Jozefyk*, 923 F.3d at 497; *Binion*, 13 F.3d at 245.

Williams next argues that the ALJ failed to fulfill his duty fully and fairly to develop the record, pointing to several problems with the ALJ's examination of the VE. As a result, he contends, the record is incomplete and cannot support the ALJ's step-five finding that he can perform at least three jobs that are sufficiently abundant in the national economy.

An ALJ always has a duty fully and fairly to develop the record. *Binion*, 13 F.3d at 245; *see also Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). That duty is greatly heightened when the claimant is unrepresented and has mental impairments. *Binion*, 13 F.3d at 245; *Ransom v. Bowen*, 844 F.2d 1326, 1330 n.4 (7th Cir. 1988). A decision of no disability based on an incomplete record is reversible error if there is a "significant" omission in the evidence—that is, one likely to have prejudiced the proceedings. *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997).

Williams persuasively argues that the ALJ erred by failing to ask the VE whether her testimony—that someone with Williams's limitations could perform the jobs she identified—conflicted with the definitions of those jobs in the Dictionary of Occupational Titles. An ALJ is required to ask the VE whether her testimony conflicts

with the Dictionary. *See* Social Security Ruling 00–4p, 2000 WL 1898704, at *4. A failure to do so is harmless if no conflict exists. *See Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009). But if a conflict is "apparent," the ALJ must ask for a "reasonable explanation." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). "[A] claimant's failure to raise a possible violation of SSR 00–4p at the administrative level does not forfeit the right to argue later that a violation occurred." *Id*.

Here, a significant conflict between the VE's testimony and the Dictionary warrants remanding Williams's case to further develop the record. Each of the jobs that the VE identified requires level-one math proficiency, which the Dictionary defines as the abilities to:

Add and subtract two digit numbers.
Multiply and divide 10's and 100's by 2, 3, 4, 5.
Perform the four basic arithmetic operations with coins as part of a dollar.
Perform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound.

*See* UNITED STATES DEPT. OF LABOR, DICTIONARY OF OCCUPATIONAL TITLES 1011 (4th ed. 1991). Meanwhile, the record shows that Williams's math skills were at a second-grade level. According to Dr. Prescott, Williams could not consistently add or multiply single-digit numbers and could not perform serial threes or any division. And the ALJ gave "good" weight to Prescott's assessment. Moreover, Williams was turned down for a job measuring and cutting pipes because he could not pass the required math test, suggesting that he also may struggle to perform jobs that the Dictionary designates as requiring level-one math skills.

We recognize that jobs designated as requiring level-one math skills may not actually require the listed abilities. *See* Social Security Ruling 00–4p, 2000 WL 1898704, at *2–3 (explaining that the Dictionary "lists maximum requirements"). But the ALJ may set aside the Dictionary's job requirements based only on another "reliable source of occupational information." *Id*.; *accord Overman*, 546 F.3d at 464. Here, the record contains no such source because the ALJ did not ask the VE whether the Dictionary's listed math skills were real-world requirements. Thus, the ALJ's step-five finding is not supported by substantial evidence. *See Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006) (remanding where the jobs that the VE identified "as defined by the DOT" required "capabilities that are beyond [the claimant's] limitations"); *accord Overman*, 546 F.3d at 465 (remanding where "ALJ's ruling was premised entirely on testimony that conflicted with the DOT").

We VACATE the judgment and REMAND for further proceedings to develop the record about whether jobs exist in the market that someone with Williams's limited mathematical abilities can perform. Because Williams would benefit from representation in developing that record, we encourage him to renew his efforts to obtain counsel before any evidentiary hearing.