**Ladonna S. LATKOWSKI,**
**Plaintiff–Appellant,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant–Appellee.**

No. 03–2767.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 16, 2004.

Decided March 25, 2004.

964

John E. Horn, Tinley Park, IL, for Plaintiff–Appellant.

Jessie Wang–Grimm, Depak Sathy, Social Security Administration, Chicago, IL, for Defendant–Appellee.

Before FLAUM, Chief Judge, RIPPLE, and ROVNER, Circuit Judges.

## ORDER

Ladonna Latkowski applied for Social Security widow's disability benefits. After administrative proceedings resulted in a final decision denying her claim, Ms. Latkowski brought this action in the district court seeking review of the administrative decision. Upon cross-motions for summary judgment, the district court denied Ms. Latkowski's motion and granted the Commissioner's motion. Ms. Latkowski then filed this timely appeal. For the reasons set forth in this order, we affirm the judgment of the district court.

## I

## BACKGROUND

### A. Facts

When Ms. Latkowski applied for widow's disability benefits in 1999, she was fifty-two years old; she had a high school degree, no past relevant work and a history of medical problems.

Ms. Latkowski began suffering petit mal seizures as a child. Although she has had no reported seizures since 1996, she suffers periodic light-headedness, possibly as a result of the medication taken for the seizure disorder. Beginning in 1995, Ms. Latkowski experienced various pains and difficulties in her arms, hands and feet. These ailments were variously attributed to tendinitis, bursitis, numbness and radiculopathy. In 1997, Ms. Latkowski underwent carpal tunnel surgery on her right wrist. She later complained of pain in this wrist during weather changes. In 1998, Ms. Latkowski was admitted to the hospital for leg pain. After a venous doppler study ruled out the presence of phlebitis or a related defect and neurovascular signs were found normal, the leg pain was diagnosed as acute musculoskeletal strain.

In March 1999, Ms. Latkowski's husband died, and she applied for widow's disability benefits. During the pendency of her application for benefits, Ms. Latkowski continued to experience medical problems. In January 2000, she complained of right hand discomfort and weakness of grip. Measurement of her forearms revealed a quarter inch decrease on the right. Shortly thereafter, swelling and tenderness in the right hand was observed, and arthritis was diagnosed. Later, a radiologist found "questionable early findings of rheumatoid arthritis." A.R. at 222.

### B. Administrative Proceedings

Ms. Latkowski's application for benefits was denied and denied upon reconsideration. She requested an administrative hearing, and one was held before an ALJ in November 1999.

#### 1. Administrative Hearing

At the hearing, Ms. Latkowski testified as to her daily activities and limitations. She noted that she prepared and ate meals, watched TV, did laundry, vacuumed and performed other household tasks. She testified that she could walk a short distance to the store and carry two small grocery bags home. Ms. Latkowski also indicated that she could lift her vacuum, which she estimated to weigh between ten and twenty pounds. She explained that she had no difficulty lifting a water pitcher but did have difficulty opening jars. Ms. Latkowski testified that she did not drive because of her medication.

In addition to Ms. Latkowski's testimony, the ALJ also received medical evidence. Prior to the hearing, Dr. Anjum Hameeduddin, a general practitioner and Ms. Latkowski's primary care physician, assessed Ms. Latkowski's limitations. Dr. Hameeduddin indicated that Ms. Latkowski could lift a maximum of ten pounds,

could stand two hours in an eight-hour workday, and could frequently stoop and occasionally climb, balance, kneel, crouch and crawl. She was limited in fine manipulation and feeling in the right hand due to carpal tunnel syndrome. Also, Dr. Hameeduddin indicated that Ms. Latkowski should avoid exposure to extreme temperatures, wetness, humidity and noise and must avoid all exposure to heights because of fear. Dr. Hameeduddin's assessment was essentially a sedentary residual functional capacity ("RFC").

Dr. Bruce Donnelly, a non-treating, non-examining physician, also completed an RFC prior to the hearing based on the medical evidence. Dr. Donnelly indicated that Ms. Latkowski could lift one hundred pounds or more occasionally and could lift fifty pounds or more frequently. He further indicated that she could sit, stand and walk for approximately six hours in an eight-hour day. He considered her ability to push and pull to be unlimited. He also noted that she could balance, stoop, kneel, crouch and crawl frequently. He found that she should avoid exposure to large machinery and heights, but that she was subject to no other environmental limitations. Dr. Donnelly opined that Ms. Latkowski could perform work at all exertion levels.

At the hearing, Dr. Irving Slott, a specialist in internal medicine, recommended a consultative examination of Ms. Latkowski. Dr. Slott originally recommended a neurological consultation:

> I would make a suggestion that she be given a consultation with a neurologist[;] one, so that he can examine what has taken place with the carpal tunnel syndrome, how good the results were.

Two, how severe the petit mal seizures are according to the listing. And three, the pain that she described in the legs may have a nerve involvement also and they should do an EMG on the lower extremities because of the involvement of the upper extremities and the fact that she had no back, lumbosacral spine X-ray to determine whether she has any lumbosacral disease. So at this point I cannot find a listing that she meets, but the evaluation that I just mentioned, I think, would be in order.

A.R. at 48. In response to this testimony, the ALJ indicated that he also believed a consultative examination should be performed but expressed concern over whether a neurological examination was appropriate:

> We do have some medical records, but I think it really would be good to have some more complete evaluation of the various body symptoms, things of that nature. And especially since the question to the ability to use hands, that's something that we ought to have evaluated. I'm not sure at this point whether it would be the examination I would have done, whether it would be a neurological or an internal or maybe even an orthopedic. An orthopedic might give us the best functional kind of evaluation of her, the use of her hands and her legs and her back. And even if we had her sent to a neurologist, I'm not sure that we can have EMGs done anyway. But I, I would definitely want to have a full examination done before I make a decision.

*Id.* at 49.[1] Dr. Slott interjected the comment that consultation with an orthopedist or a rheumatologist would be appropriate

---

1. In its brief to this court, the Commissioner attributed these comments to Dr. Slott, and this error was not corrected at oral argument by either party. Although the transcript is somewhat ambiguous, identifying speakers only by "Q" and "A," the reference to "mak[ing] a decision" clearly identifies the ALJ as the speaker. A.R. at 49.

to determine whether Ms. Latkowski suffered from fibromyalgia rheumatica. Upon examination by Ms. Latkowski's counsel, Dr. Slott clarified that he was recommending *both* a neurological and an orthopedic consultation.

A vocational expert also testified. The ALJ asked him to respond to a hypothetical question involving a fifty-three year-old woman with a high school education and no prior relevant work history, who was limited to lifting ten pounds frequently and twenty pounds occasionally, who was able to stand, walk, or sit for at least six hours in an eight-hour workday, but who was not able to perform repetitive manipulative tasks with her hands, and who could not drive or work at heights, under extreme temperatures or with heavy machinery. The expert responded that several types of jobs existed, including security officer work (over 5000 jobs), customer service work (3000 jobs), light intensity telephone operation (4000 jobs), light intensity receptionist (3000–5000 jobs), restaurant hostess (3000 jobs) and billing clerk type jobs (2000). The ALJ then asked a second hypothetical, further limiting the individual's ability to use her hands and arms for manipulative tasks only occasionally. The expert responded that such a person would not be able to perform gainful employment, noting only that such a person might be able to serve as a greeter at a department store (1000 jobs). Ms. Latkowski's counsel elicited testimony from the expert that the hypothetical person's inability to lift more than ten pounds either occasionally or frequently would preclude any work other than sedentary.

At the close of the hearing, the ALJ indicated that he intended to order a consultative examination and that his "inclination is to have either an orthopedic or rheumatology evaluation done." *Id.* at 59. He invited comments on the merits of ordering a neurological evaluation: "I'm not sure about the neurological, but I will give it some thought. I'd be happy to hear your views on that, too." *Id.* The record includes no comments from Ms. Latkowski's counsel on the necessity or the advisability of a neurological examination. The ALJ later ordered an orthopedic consultation.

Dr. Anthony L. Brown, who performed Ms. Latkowski's carpal tunnel surgery, conducted the orthopedic consultation. Dr. Brown found occasional discomfort and grip weakness in the hands but full range of motion in the shoulders, elbows, forearms and wrists. He found no other abnormalities. Dr. Brown completed an RFC and indicated that Ms. Latkowski could lift and carry up to twenty-five pounds continuously, up to fifty pounds frequently and up to one-hundred pounds occasionally. He indicated that she could sit, stand or walk for eight hours in a workday and could bend, squat, crawl, climb and reach continuously. He found that Ms. Latkowski could use her feet for repetitive motions and that she had no environmental restrictions. Ms. Latkowski objected to these findings in writing. After Dr. Hameeduddin's treatment notes were added to the record, Ms. Latkowski's counsel indicated that he had "no objection" to closing the record. *Id.* at 208.

## 2. Administrative Decision

After the receipt of all evidence, the ALJ issued a decision denying Ms. Latkowski benefits. The ALJ followed the five-step sequential analysis prescribed by the Social Security Administration regulations for evaluation of disability. *See* 20 C.F.R. § 404.1520(a). First, the ALJ found that Ms. Latkowski was not engaged in substantial gainful activity. Second, the ALJ noted that the history of seizures and the post-carpal tunnel surgery status qual-

ified as "severe" under the Social Security Act and regulations, but, at the third step of the analysis, the ALJ determined that those impairments did not meet or equal the requirements of severity in the regulations. At step four, the ALJ considered Ms. Latkowski's residual functional capacity. He found that Ms. Latkowski was generally credible in attesting to daily activities and determined that Ms. Latkowski was restricted to a wide range of light work:

> Specifically, the claimant is limited to lifting/carrying 10 pounds frequently and 20 pounds occasionally, but can stand, walk and sit 6 hours each during an 8–hour day. In addition, she cannot perform repetitive tasks with her hands, and cannot be exposed to heights, driving, heavy machinery, or extremes in temperature.

A.R. at 21. The ALJ noted that, in reaching this conclusion, he had considered the more restrictive opinion of Dr. Hameeduddin; however, he found that opinion inconsistent with Dr. Hameeduddin's own observations in office notes, with Ms. Latkowski's testimony as to her daily activities and with the findings of Dr. Brown, the consultative examiner. The ALJ also noted that he had not accepted fully the consultative RFC of Dr. Brown; specifically, he had rejected Dr. Brown's opinion of Ms. Latkowski's ability to lift weight.

At the fifth step of the analysis, the ALJ considered whether a significant number of jobs existed in the economy that the claimant could perform given her age, education, work experience and functional limitations. The ALJ noted that Ms. Latkow-

ski, born on August 22, 1946, was fifty-three years old and closely approaching advanced age. She was a high school graduate with no past relevant work and had a residual functional capacity for a limited range of light work. He then determined that, according to the testimony of the vocational expert, a significant number of jobs existed in the economy for such a person, including security officer, customer service representative, telephone operator, receptionist, hostess and billing clerk. The ALJ therefore concluded that Ms. Latkowski was not under a "disability" as defined by the Social Security Act and was not entitled to benefits as a disabled widow.

Ms. Latkowski requested review by the Appeals Council within the Administration. During the pendency of this request, Ms. Latkowski turned fifty-five. The Appeals Council thereafter denied review, which transformed the decision of the ALJ into the final decision of the Commissioner. Ms. Latkowski appealed to the district court for administrative review.

## C. District Court Proceedings

After Ms. Latkowski commenced a civil action in the district court, her case was remanded to the Appeals Council because the administrative record was lost. During the pendency of the remand, Ms. Latkowski's counsel sent a letter to the Appeals Council requesting retroactive benefits given her attainment of the age of fifty-five and the circumstances found by the ALJ.[2] The Appeals Council declined to grant such relief. When the administrative record was located, the case was returned to the district court. Both

2. The letter contended that the Administration's Medical–Vocational Guidelines mandated benefits for an individual meeting Ms. Latkowski's RFC who was of the age of fifty-five. However, Ms. Latkowski did not file a new claim based on her attainment of the age of fifty-five. Indeed, as of the date of oral argument, Ms. Latkowski had not filed a new claim.

parties filed cross-motions for summary judgment. The district court denied Ms. Latkowski's motion for summary judgment and granted the Commissioner's motion for summary judgment. Ms. Latkowski filed this timely appeal.

## II

## DISCUSSION

### A. Standard of Review

We review de novo the district court's entry of summary judgment in favor of the Commissioner. *See Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir.2001); *O'Regan v. Arbitration Forums, Inc.,* 246 F.3d 975, 983 (7th Cir.2001). However, in reviewing the decision of the Commissioner to deny benefits, we employ the same standard of deferential review used by the district court. *See Dixon,* 270 F.3d at 1176. Review is limited to a determination of whether the Commissioner's decision is supported by substantial evidence in the record. *See Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir.2003); *Dixon,* 270 F.3d at 1176. "Substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gudgel,* 345 F.3d at 470 (quoting *Cannon v. Apfel,* 213 F.3d 970, 974 (7th Cir.2000)).

### B. Substantial Evidence To Support the ALJ's Decision

In making a disability determination, an ALJ must invoke the five-step analysis. *See* 20 C.F.R. § 416.920(a)(4). At the first step, work activity is considered. At the second step, the medical severity of the impairment is determined. At the third step, medical severity is again considered to determine if the impairment or a combination of them meet the severity listings in the regulations. At the fourth step, residual functional capacity is considered. At the fifth step, the claimant's RFC, age, education and work experience are considered to determine if the individual can adjust to other work. *See id.* § 416.920(a)(4)(i)-(v). Ms. Latkowski submits that the ALJ's findings at the fourth and fifth stages of the analysis are not supported by substantial evidence because the ALJ failed to give controlling weight to the treating physician's opinion, failed to order a neurological examination, and made factual errors in characterizing Ms. Latkowski's testimony.

### 1. Consideration of the Treating Physician's Opinion

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel,* 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)). The treating physician is generally more familiar with the claimant's medical conditions and circumstances. *See id.* However, "a claimant is not entitled to disability benefits simply because her physician states that she is 'disabled' or unable to work" because a treating physician may bring biases to an assessment. *Dixon,* 270 F.3d at 1177. Thus, the treating physician's opinion may be given less weight when it is not well-supported and is inconsistent with other evidence. If the ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ must support that decision with "good reasons." 20 C.F.R. § 404.1527(d)(2). The contrary opinion of a non-examining physician, in and of itself, is not sufficient reason to reject the opinion of the treating physician. *See Gudgel,* 345 F.3d at 470.

In this case, the treating physician, Dr. Hameeduddin, assessed Ms. Latkowski with various limitations rejected by the

ALJ. Particularly, Dr. Hameeduddin indicated that Ms. Latkowski could lift a maximum of ten pounds, could stand at least two hours in an eight-hour workday, could only occasionally climb, balance, kneel, crouch and crawl and was limited as to fine manipulation. The ALJ found, instead, that Ms. Latkowski was limited to lifting and carrying ten pounds frequently and twenty pounds occasionally, that she could stand, walk and sit six hours each during an eight-hour day, and that she could not perform repetitive tasks with her hands but could perform manipulative tasks more than occasionally.

The ALJ recognized that his RFC findings contradicted, in part, those of Dr. Hameeduddin, and recognized the deference generally accorded to the treating physician's opinion; nonetheless, the ALJ indicated that Dr. Hameeduddin's contrary findings were not supported by substantial evidence in the record:

> Although ... opinions of treating physicians are generally entitled to significant weight, they must be well-supported by medically acceptable clinical and laboratory diagnostic techniques, and must not be inconsistent with the other substantial evidence of record. In this case, the opinion is not supported by Dr. Hameeduddin's own findings and observations as contained in his [sic] office notes. For instance, there is no objective evidence whatever in the record to warrant a finding that Ms. Latkowski's ability to stand or walk is limited, or that she can only occasionally engage in activities such as climbing stairs, kneeling or crouching.
>
> Also, the restrictions the doctor placed on the claimant's lifting and carrying are contrary to Ms. Latkowski's *own* assertions of what she can do. Finally Dr. Hameeduddin's assessment is inconsistent with the findings of the consultative examiner. In light of all these factors, Dr. Hameeduddin's opinion is not entitled to "controlling weight" (Social Security Ruling 96–2p).

A.R. at 21–22. The ALJ further discussed the contrary evidence in the record from Dr. Brown's orthopedic consultative assessment, indicating that Ms. Latkowski could lift or carry up to 50 pounds frequently and up to 100 pounds occasionally.[3] (However, the ALJ also noted that he had not accepted fully these conclusions of Dr. Brown because he found them inconsistent with the other evidence in the record.) Additionally, the ALJ discussed the lack of significant evidence of back or leg impairments, the lack of objective evidence of the cause of ankle pain or swelling, the lack of impairment in her left arm or hand, and the evidence of only minor and occasional pain and swelling in her right hand. The ALJ concluded: "When these factors are considered in context with the mostly normal findings at the recent consultative examination, and the claimant's level of daily activities, a light level of exertional ability (with the restrictions cited above) is amply supported by the record." *Id.* at 22.

The ALJ provided "good reasons" to give less than controlling weight to Dr. Hameeduddin's RFC. As the ALJ explained, Dr. Hameeduddin's progress notes from her years of treatment of Ms. Latkowski did not support limitations on walking, standing, climbing stairs, kneeling or crouching. Ms. Latkowski herself testified that she could lift up to twenty pounds, although she later modified that amount to twelve pounds. No medical tests supported the grip strength reduction found by Dr. Hameeduddin, and the

---

**3.** Dr. Brown's assessment was supported by the assessment of Dr. Donnelly, the non-treating, non-examining physician, who completed an RFC prior to the administrative hearing.

971

clinical testing performed in February 2000 did not clearly confirm arthritis. Finally, Dr. Brown, who performed the consultative orthopedic examination, found full range of motion in the upper extremities, no tenderness, swelling or signs of reaction in the right wrist, full finger motion, finger sensation, no tendinitis and negative tests for carpal tunnel. Given this evidence, the ALJ reasonably found that Dr. Hameeduddin's RFC was "inconsistent with other substantial evidence in the record," *Gudgel*, 345 F.3d at 470, and the ALJ was therefore entitled to limit the weight given that opinion.

Nonetheless, Ms. Latkowski submits that, rather than rejecting Dr. Hameeduddin's findings of additional restrictions, the ALJ should have requested that Dr. Hameeduddin submit objective evidence of those impairments. *See* 20 C.F.R. § 404.1512(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). Ms. Latkowski relies on this court's previous decision in *Smith v. Apfel*, 231 F.3d 433 (7th Cir. 2000). In *Smith*, the ALJ discredited the treating physician's diagnosis of arthritis. *Id.* at 437. The ALJ rejected the diagnosis based on the lack of objective evidence, despite the existence of ten year-old x-rays that showed the onset of degenerative disease. *See id.* at 437–38. This court determined that the ALJ had a duty to develop a full record by obtaining recent x-rays. *See id.* at 437. Given the ALJ's failure to develop a record, the absence of objective evidence was not a sufficient basis to discredit the treating physician's opinion. *See id.* at 438.

*Smith* does not control the situation before us today. Although the ALJ in Ms. Latkowski's case did rely partially on the absence of objective findings, the ALJ also relied upon the fact that the asserted restrictions actually *contradicted* other substantial evidence in the record, namely, Dr. Hameeduddin's own treatment notes, Ms. Latkowski's testimony as to daily activities and the medical findings of the other physicians. Because Dr. Hameeduddin's opinion not only lacked objective support but was also *contradicted by* substantial objective evidence in the record, the ALJ was entitled to discredit partially Dr. Hameeduddin's RFC. *See Gudgel*, 345 F.3d at 470; *Henderson ex rel. Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir.1999) ("An ALJ need not give controlling weight to a treating physician's opinion if it is not supported by objective clinical findings."); *cf. McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir.2002) (noting that the ALJ had an obligation under 20 C.F.R. § 404.1512(e)(1) to request additional evidence from the treating physician before rejecting the treating physician's assessment because the ALJ doubted, "in the face of unrefuted evidence to the contrary," that the treating physician actually agreed with the assessment he signed).

2. Decision Not To Order a Neurological Examination

■ As an initial matter, we note Ms. Latkowski waived her right to maintain this contention on appeal. At the close of the administrative hearing, the ALJ indicated his inclination to order an orthopedic as opposed to a neurological examination and invited Ms. Latkowski to submit comments on the merits of a neurological consultation. Ms. Latkowski submitted no such comments. On March 2, 2000, after the orthopedic examination and the inclusion of Dr. Hameeduddin's treatment notes in the administrative record, Ms. Latkowski's counsel indicated: "I have no objection to the record being closed at this point." A.R. at 208. This statement con-

stitutes a waiver of Ms. Latkowski's present claim that the ALJ should have ordered a neurological examination.[4] *See Union Tank Car Co., Inc. v. Occupational Safety & Health Admin.,* 192 F.3d 701, 707 (7th Cir.1999) ("[F]ailure to present an argument to the ALJ does constitute waiver of the right to raise it on appeal. . . .").

■ Nonetheless, the Commissioner did not raise the issue of waiver either in the district court or in this court, and we therefore proceed to consider the merits of Ms. Latkowski's claim. *See Garlington v. O'Leary,* 879 F.2d 277, 282 (7th Cir.1989) ("[A] defense of waiver can itself be waived by not being raised.").

■ The ALJ rejected the recommendation of Dr. Slott, the consulting internist, that a neurological examination be conducted. Ms. Latkowski contends that, by declining to order such an examination, the ALJ "played doctor" and substituted his own judgment for that of a medical witness. *See Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir.1996) (noting that "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"). In *Rohan,* however, the ALJ rejected a doctor's diagnosis of depression because of activities the ALJ found inconsistent with that diagnosis. *See id.* at 970–71. In this case, the ALJ did not make "independent medical findings" or reject a diagnosis, but rather exercised discretion in choosing the appropriate type of consultative examination. The ALJ has reasonable latitude in developing a complete administrative record. "While it is true that the ALJ has a duty to make a complete record, this requirement can reasonably require only so much." *Scheck v. Barnhart,* 357 F.3d 697, 702 (7th Cir. 2004). In determining whether an ALJ has sufficiently developed the administrative record, the courts "accept reasonable assessments by administrative officials about how much evidence is enough." *See Kendrick v. Shalala,* 998 F.2d 455, 457 (7th Cir.1993).

The ALJ reasonably declined to order a neurological examination in Ms. Latkowski's case. The medical expert gave three reasons in support of his recommendation of a neurological examination: 1) to assess Ms. Latkowki's seizure disorder; 2) to assess the carpal tunnel syndrome; 3) to conduct an inquiry into Ms. Latkowski's leg pain. In light of the other medical evidence in the record, we cannot say that those reasons were so compelling as to make the ALJ's determination unreasonable. First, Ms. Latkowski's seizures had been controlled by medication for some time, and clearly did not meet the regulation listing for severity.[5] Second, the carpal tunnel condition was evaluated by the orthopedist who had performed the surgery and who performed a functional evaluation of Ms. Latkowski. Third, the major incident of leg pain indicated by the record had been diagnosed as muscular strain, after a venous doppler study ruled out phlebitis or a related defect, and neurovascular signs were within normal limits. Additionally, although Ms. Latkowski testified that she had experienced swollen an-

---

4. Certainly the statement contradicts counsel's assertion in the appellate brief that "[o]n March 22, 2000, the ALJ surprised Latkowski, who was awaiting directions for the suggested neurological examination, by issuing an unfavorable decision." Appellant's Br. at 5.

5. Under the regulation listings, petit mal seizures are considered a disability if docu-

mented by "detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1. Ms. Latkowski's last seizure was in 1996.

kles and occasional leg muscle spasms during weather changes, she did not indicate that these events led to any limitations in her daily activities or that they rose to the level of an impairment. Thus, lower extremity complaints were a fairly minor aspect of her claim for benefits. Finally, the orthopedic consultation itself did not reveal any abnormalities that indicated the need for further neurological examination. Under these circumstances, we must conclude that the ALJ made a reasonable assessment of the sufficiency of the record in deciding not to order a neurological examination. *Cf. Kendrick,* 998 F.2d at 458 (noting that "it is always possible to do more" but respecting a reasoned judgment of the ALJ not to order additional proceedings).

Finally, we note that Ms. Latkowski's failure to submit comments on the necessity of a neurological examination as well as counsel's statement that there was "no objection" to closing the record further support the conclusions that a neurological examination was not necessary and that the ALJ's decision not to order one was reasonable.

### 3. Characterization of Ms. Latkowski's Testimony

Ms. Latkowski submits that the ALJ improperly characterized her testimony and that this mischaracterization led to errors in the hypothetical question and, consequently, failure to consider favorable evidence. Specifically, Ms. Latkowski submits that the ALJ mischaracterized testimony regarding pain in her wrists, specifically during *weather changes,* ignored testimony regarding her inability to turn the lid of a jar, and mischaracterized her testimony regarding the weight she is able to lift. Because the ALJ found her "generally forthright and credible," A.R. at 21, Ms. Latkowski argues that the ALJ's factual characterizations are irrational.

Ms. Latkowski's contentions lack merit. First, the ALJ noted Ms. Latkowski's complaints to Dr. Brown of wrist pain during "weather changes." *Id.* at 19. Second, although the ALJ did not specifically note Ms. Latkowski's testimony regarding inability to turn the lid of a jar, the ALJ did note Ms. Latkowski's complaints to Dr. Brown about her weakness of grip. *See id.* Third, as explained below, the ALJ accurately characterized Ms. Latkowski's testimony as to the amount of weight she was able to lift.

At the hearing, Ms. Latkowski testified that an object would have to weigh "about 20 pounds" before she would have difficulty holding it. *Id.* at 40. She later testified that the heaviest item she lifts is her vacuum, which weighs between ten and twenty pounds. After the hearing, she supplemented the record to indicate that her vacuum weighed twelve pounds. The ALJ noted this revision in his decision: "She stated she has trouble holding on to heavy things (i.e., those items weighing more than 20 pounds, an estimate she later modified to 12 pounds ...)." *Id.* at 20. Ms. Latkowski characterizes this statement as inaccurate because she testified she would have trouble holding *"about* 20 pounds," and someone who has trouble holding *"about* 20 pounds" is precluded from light work. *Id.* at 40 (emphasis added). The ALJ's statement is substantially accurate. Although he used the word "more" rather than "about" in a context in which the distinction between the two words might be relevant, he also noted that Ms. Latkowski revised her estimate of the weight she is able to lift to twelve pounds. Therefore, his statement adequately reflects her testimony.

█ Additionally, the record contained more than enough evidence to support the

ALJ's conclusion that Ms. Latkowski was capable of lifting ten pounds frequently and twenty pounds occasionally, which is the ultimate issue on review. Ms. Latkowski testified to her daily activities, which included vacuuming, doing laundry and carrying groceries. The record also indicated that Ms. Latkowski occasionally babysat a ten month-old grandchild. The medical evidence provided by Drs. Donnelly and Brown indicated that Ms. Latkowski was capable of lifting substantially more than twenty pounds. This evidence conflicted with Ms. Latkowski's testimonial estimate of the weight she could lift and Dr. Hameeduddin's RFC. The ALJ was required to resolve the conflicting evidence in the record, and indeed he did so predominately in Ms. Latkowski's favor. Substantial evidence supported his finding.

Ms. Latkowski maintains that factual errors in characterizing her testimony affected the hypothetical questions posed to the vocational expert. However, as we have just explained, the ALJ did not mischaracterize the evidence, and the findings of the ALJ were supported by substantial evidence. The hypothetical question relying upon those facts was therefore appropriate. *See Cass v. Shalala,* 8 F.3d 552, 555–56 (7th Cir.1993) ("[W]hen considering the appropriateness of an hypothetical question posed to a vocational expert, '[a]ll that is required is that the hypothetical question be supported by the medical evidence in the record.'") (quoting *Ehrhart v. Sec'y,* 969 F.2d 534, 540 (7th Cir.1992)). Likewise, the ALJ committed no error in declining to analyze the vocational expert's response to the second, more restrictive hypothetical because that hypothetical was based on limitations the ALJ justifiably rejected.

Finally, the ALJ adequately considered Ms. Latkowski's allegations of pain. The ALJ found Ms. Latkowski's subjective complaints of pain "generally credible" but determined that those complaints did not "render her disabled." A.R. at 24. However, because the ALJ noted "no objective evidence of a cause for her occasional ankle pain or swelling," *id.* at 22, Ms. Latkowski contends that the ALJ failed to investigate adequately her claim. We have said that an ALJ "must investigate all avenues presented that relate to pain, including claimant's prior work record, information and observations by treating physicians, examining physicians, and third parties." *Luna v. Shalala,* 22 F.3d 687, 691 (7th Cir.1994). The ALJ properly investigated Ms. Latkowski's pain by considering the physicians' opinions, descriptions of Ms. Latkowski's daily activities and the courses of treatment prescribed for her various pains. *See id.* Given this investigation, the ALJ did not fail to consider favorable evidence.[6]

## C. Benefits as of the Age of Fifty–Five

In an alternative argument, Ms. Latkowski contends that the Appeals Council should at least have granted her benefits as of her fifty-fifth birthday, which occurred while her claim was pending before the Appeals Council, because the guidelines mandate allowance of the claim of a person of that age, education, and RFC as found by the ALJ. A claimant of the age fifty-five is characterized as of "advanced age," and the claim of an individual of "advanced age" with no past relevant work, a high school education and an RFC for limited light duty work should be allowed. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00, Tbl. No. 2.

---

**6.** Additionally, we note that, although Ms. Latkowski alleged pain in her wrists, hands, and legs, and swelling in her ankles and feet, she does not argue on appeal that those conditions were debilitating or would preclude light work.

Ms. Latkowski relies upon the principle of res judicata and *Lively v. Secretary of Health and Human Services*, 820 F.2d 1391 (4th Cir.1987), to support her argument. In *Lively*, the claimant turned fifty-five two weeks after an ALJ decision which held that he was limited to light duty work. *See id.* at 1392. The claimant reapplied for benefits after his fifty-fifth birthday. *See id.* The Fourth Circuit held that res judicata applied as to the light duty RFC finding in the earlier claim and determined that the Commissioner bore the burden of establishing a sufficient recovery to justify an RFC finding of medium duty work. *See id.* Because there was no evidence of a "miraculous improvement," the claimant was entitled to benefits. *Id.* On the basis of *Lively*, Ms. Latkowski argues that this court should reverse the Commissioner's decision and grant benefits as of Ms. Latkowski's fifty-fifth birthday.

Despite her fifty-fifth birthday, Ms. Latkowski has not filed a second claim; thus, there is no successive cause of action to which res judicata and the principle of *Lively* could apply and no official claim for this court to consider. For these reasons, this court cannot grant Ms. Latkowski the relief she seeks.

### Conclusion

The ALJ's decision is supported by substantial evidence, and Ms. Latkowski has not filed a claim for benefits based on her advanced age. For these reasons, we affirm the judgment of the district court.

AFFIRMED