**James KENDRICK, Plaintiff–Appellee,**

**v.**

**Donna E. SHALALA, Secretary of Health and Human Services, Defendant–Appellant.**

**No. 92–3077.**

United States Court of Appeals, Seventh Circuit.

Argued June 11, 1993.

Decided July 1, 1993.

A. Robert Kassin, Edwardsville, IL (argued), for plaintiff-appellee.

Frederick J. Hess, U.S. Atty., Laura J. Jones, Asst. U.S. Atty., Crim. Div., Fairview Heights, IL, Donna L. Calvert, Dept. of Health and Human Services, Region V, Office of Gen. Counsel, Chicago, IL (argued), William E. Coonan, Asst. U.S. Atty., Civ. Div., Fairview Heights, IL, for defendant-appellant.

Before EASTERBROOK and MANION, Circuit Judges, and ALDISERT, Senior Circuit Judge.*

EASTERBROOK, Circuit Judge.

Federal disability benefits are awarded to those who are unable to pursue gainful employment. The process used to determine both a claimant's abilities and the work available in today's economy is partly adversarial and partly inquisitorial. A claimant may elect legal representation, but procedures are informal. See *Richardson v. Perales*, 402 U.S. 389, 400–01, 91 S.Ct. 1420, 1426–27, 28 L.Ed.2d 842 (1971). With the informality, which simplifies administration of the program and makes it more accessible to the public, comes a duty for the presiding officer to develop a complete record, as European magistrates do. E.g., *Thompson v. Sullivan*, 933 F.2d 581, 587 (7th Cir.1991); *Smith v. Secretary of HEW*, 587 F.2d 857, 860 (7th Cir.1978). The difficulty is that no record is "complete"—one may always obtain another medical examination, seek the views of one more consultant, wait six months to

---

* Hon. Ruggero J. Aldisert, of the Third Circuit, sitting by designation.

see whether the claimant's condition changes, and so on. Taking "complete record" literally would be a formula for paralysis, undermining all of the objectives of simplified procedure.

How much is enough is a subject on which reasonable persons can differ. Administrative law judges, members of the Appeals Council, and three tiers of federal judicial officers (magistrate judges, district judges, and circuit judges) bring different perspectives to the inquiry. Sequential review, with each tier able to reverse the prior one, means that to be safe the ALJ must develop the record as fully as the most demanding reviewer prefers. Because these reviewers are selected at random from a large pool, to be *really* safe the ALJ must please the most demanding federal judge in the jurisdiction. Yet this portends extended hearings and corresponding delay for the many claimants waiting for an ALJ to reach their case in a long queue. See Jerry L. Mashaw, *Bureaucratic Justice: Managing Social Security Disability Claims* 189 (1983): "Social Security disability cases ... reveal a judiciary impaled on the horns of a now familiar dilemma. It can recognize the complexity and subtlety of the administrative system and exercise a restrained review having little or no statistical impact or precedential significance; or it can wade in with the tools at its disposal, producing sometimes unanticipated and negative dynamic effects on quality, sometimes formal but insubstantial obedience, and sometimes a simple transformation of administrative into judicial process." Concern for the need to get on with today's cases today and reach tomorrow's cases tomorrow, rather than next month, suggests that the federal judiciary accept reasonable assessments by administrative officials about how much evidence is enough.

James Kendrick sought disability benefits in 1988 after losing an eye. He asserted no other problem. In support of his claim he submitted hospital records and the report of an eye surgeon. The state agency obtained a report from a second physician, who concluded that Kendrick has an unrestricted capacity for work except in jobs that require depth perception. Kendrick requested reconsider-

ation; the state sent Kendrick to two more physicians. Both concluded that he can work at jobs that do not require stereoscopic vision. Next Kendrick requested a hearing before an administrative law judge. At this hearing he contended, for the first time, that he suffers from back and hand problems, dizziness, and memory lapses. Kendrick did not report any other impediment, and the ALJ found him not disabled. While Kendrick's administrative appeal was pending he visited a chiropractor, who diagnosed a "lumbar sprain/strain with left radiculitis." The chiropractor sent Kendrick for an x-ray, which revealed no abnormality. Kendrick also visited a psychiatrist, who reported that Kendrick suffers from anxiety and depression. The psychiatrist recommended psychotherapy and prescribed an anti-anxiety drug. The Appeals Council returned the case to the ALJ for reconsideration in light of this new evidence.

At this point the ALJ brought a board-certified neurologist and psychiatrist into the picture, and also sent Kendrick to a psychologist. The neurologist concluded that all tests were completely normal and that Kendrick could do any job that does not involve "finer (microscopic) work" or driving (which depends on depth perception). The psychologist administered a battery of tests and diagnosed Kendrick as a malingerer: "Psychological testing (MMPI) strongly suggested malingering. He [Kendrick] endorsed an improbably high number of bizarre and unusual symptoms suggesting he was trying to fake mental illness." The psychologist concluded that Kendrick has good or very good ability in all areas related to mental functioning—except that he does not want to work. (Kendrick graduated from high school in 1982 and worked a total of seven months before the incident that deprived him of his left eye in 1988.) Kendrick told the psychologist that he gets drunk three times per month, and the psychologist suspected that Kendrick might have an alcohol "abuse" problem (as distinct from alcohol "dependence") but concluded that this does not affect his ability to work.

At the second hearing before the ALJ, who by now had reports from a wide spectrum of

medical professionals, Kendrick testified that he drinks wine or beer two or three times a week to "cheer up." The ALJ concluded that Kendrick can work and that his reports of excessive drinking—made for the first time to the psychologist after the remand from the Appeals Council—are not credible. The ALJ wrote that Kendrick is "faking bad" in an effort to obtain disability benefits. Then the ALJ concluded that even if Kendrick's reports of alcohol consumption and depression are true, he has ample ability to work, given the findings of the many persons who have considered his physical and mental state—every one of whom has opined that except for lack of binocular vision Kendrick is capable of normal activities. This time the Appeals Council denied Kendrick's application for review.

Next came this suit, asking the district court to set aside the Secretary's decision. His complaint alleged that he is disabled by a combination of back problems, leg cramps, anxiety, depression, and the lack of an eye. It did not mention alcohol. The district judge referred the case to a magistrate judge, who recommended that the case be returned for still a third hearing—to investigate possible alcoholism. The district judge observed that Kendrick is thin (6' 3" and between 128 and 146 pounds) and that the medical records mention a bowel obstruction, which the judge speculated might be attributable to alcoholism. More proceedings could explore the full extent of this problem, the judge believed. The Secretary has appealed. *Sullivan v. Finkelstein*, 496 U.S. 617, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990).

■ Only a belief that all possibilities must be exhausted at any cost in money and delay for other claimants could justify such a remand. As we remarked at the outset, it is always possible to do more. How much evidence to gather is a subject on which district courts must respect the Secretary's reasoned judgment. Administrative officials have held two hearings and obtained, at public expense, reports from five specialists in both physical and mental conditions. The record contains other reports that Kendrick submitted. Kendrick's claim of alcohol abuse entered the process after the first administrative hearing.

Both the psychologist to whom he made the report, and the ALJ at the second hearing, concluded that Kendrick is trying to pull a fast one. When the odor of alcohol is in the air, the ALJ usually should obtain a psychological report and determine whether substance abuse impairs the claimant's ability to function in employment. *Stambaugh v. Sullivan*, 929 F.2d 292, 295–96 (7th Cir.1991). The ALJ did both of these things and answered: No impairment. The district court gave no reason why substantial evidence does not support that assessment. Alcohol abuse, even alcoholism, is not disabling per se. 20 C.F.R. § 416.925(e); *In re Sullivan*, 904 F.2d 826, 845 (3d Cir.1990); *Cannon v. Harris*, 651 F.2d 513, 518 (7th Cir.1981). Nothing in the record suggests that Kendrick is an alcoholic—and if a claimant is telling a tall tale, or offers no corroboration for his story (as Kendrick offered none), the ALJ need not even start the psychological examination process. *Howell v. Sullivan*, 950 F.2d 343, 349 (7th Cir.1991); cf. *Strunk v. Heckler*, 732 F.2d 1357, 1363 (7th Cir.1984) (voluntary imbibing is not disabling). As for the "bowel obstruction": the record contains a CT scan of Kendrick's intestines, which was interpreted as normal. A consulting radiologist read x-rays of Kendrick's intestines as suggesting "a non-specific but non-obstructive bowel gas pattern". None of the many experts suggested that this gas pattern (or Kendrick's weight) is either linked to alcohol or disabling in the slightest.

■ Judicial review of administrative decisions is deferential. A decision supported by substantial evidence must be enforced. When conducting trials in their own courtrooms, judges may indulge a preference for "more"—although most do not, recognizing that cumulative evidence rarely repays the costs of gathering and presenting it. When reviewing proceedings conducted by others, district judges must respect the authority of administrative officials to decide how much is enough. Kendrick has received plenty and to spare.

REVERSED.