**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CHARLES L. DIXON,
<u>Plaintiff-Appellant,</u>

v.

No. 96-1259

SHIRLEY S. CHATER, COMMISSIONER OF
SOCIAL SECURITY,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the District of South Carolina, at Greenville.
Charles E. Simons, Jr., Senior District Judge.
(CA-93-1682-6-6AK)

Argued: November 1, 1996

Decided: January 22, 1997

Before MURNAGHAN and WILLIAMS, Circuit Judges, and
HARVEY, Senior United States District Court Judge for the
District of Maryland, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Mary J. Wiesen-Kosinski, Aiken, South Carolina, for
Appellant. Sharon Maria Fugett, SOCIAL SECURITY ADMINIS-
TRATION, Baltimore, Maryland, for Appellee. **ON BRIEF:** J. Pres-
ton Strom, Jr., United States Attorney, John B. Grimball, Assistant
United States Attorney, Arthur J. Fried, General Counsel, Randolph

W. Gaines, Acting Principal Deputy General Counsel, A. George Lowe, Acting Associate General Counsel, Disability Litigation, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Charles Dixon applied for disability insurance benefits for a period of disability commencing on February 1, 1987. Finding that Dixon could perform light work prior to August 31, 1989, the Commissioner of Social Security (the Commissioner)[1] established that date as the onset date of Dixon's disability and awarded Dixon disability benefits. Dixon appeals the onset date, claiming that the Commissioner improperly evaluated the medical evidence and improperly found that Dixon's subjective complaints were not credible. Finding no error, we affirm.

I.

Dixon was born on January 22, 1925, completed high school, and served in the military during World War II. He worked for an insur-

---

[1] On March 31, 1995, the Social Security Administration became an autonomous agency, separate from the Department of Health and Human Services. See Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, § 106(d)(2), 108 Stat. 1464, 1477. As of that date, Shirley S. Chater, Commissioner of Social Security, was substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action. We refer, therefore, to the Commissioner as the factfinder in this case, although Dixon's case was handled by both an Administrative Law Judge and the Appeals Council of the Department of Health and Human Services.

ance company as a district office manager from 1963 until the end of January 1987. He recruited, trained, and supervised personnel and paid claims. Dixon often worked ten hours a day, but toward the end of his career he began taking lengthy lunch breaks before completing his workday. Dixon has not worked since January of 1987, and he began receiving disability insurance benefits from his employer on May 1, 1987.

On November 16, 1989, Dixon applied for Social Security disability insurance benefits, claiming that he became unable to work on February 1, 1987. His claim was initially denied, but upon reconsideration, Dixon was awarded benefits for a disability commencing on August 31, 1989. Dixon appealed the onset date of disability. An Administrative Law Judge (ALJ) found that Dixon failed to prove he was not capable of performing light work from February 1, 1987 until August 31, 1989, and affirmed the award of disability benefits beginning August 31, 1989. The Commissioner's decision became final on May 13, 1993, when Dixon's request for review was denied. Dixon then filed suit in the United States District Court for the District of South Carolina. On December 15, 1995, the district court, adopting the federal magistrate judge's report and recommendation, affirmed the Commissioner's denial of benefits to Dixon prior to August 31, 1989. This appeal followed.

II.

This court, like the district court, reviews the Commissioner's disability decision to determine whether it is supported by substantial evidence and whether the correct law was applied. See 42 U.S.C.A. § 405(g) (West Supp. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is `substantial evidence.'" Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). After carefully reviewing the record, the briefs, and the arguments of the parties, we conclude that there is sub-

3

stantial evidence to support the Commissioner's finding that Dixon was not disabled prior to August 31, 1989.

Under the Social Security Act, a claimant is considered disabled if he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be . . . expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 423(d)(1)(A) (West Supp. 1996). In evaluating disability claims, the Commissioner determines whether the claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals an illness contained in the Social Security Act listings of impairments; (4) has an impairment which prevents past relevant work; and (5) has an impairment which prevents him from doing any other work. See 20 C.F.R. § 404.1520 (1996).

The ALJ found that "[t]he medical evidence establishes that the claimant has severe impairments including emphysema, non-insulin dependent diabetes mellitus, and arthritis with a history of occasional episodes of diverticulitis and well controlled gouty arthritis." (J.A. at 25.) However, the ALJ found that Dixon did not have an impairment or combination of impairments that met the medical criteria set forth in the Act's listings of impairments prior to August 31, 1990. See 20 C.F.R. pt. 404, subpt. P, app. 1 (1996). (J.A. at 25.) Furthermore, the ALJ found that prior to August 31, 1989, Dixon had the "residual functional capacity to perform work related activities except for work involving lifting and carrying more than 20 pounds at a time or strenuous physical exertion." (J.A. at 26.) Because Dixon's past relevant work did not require him to perform the lifting and exertional limitations imposed,[2] the ALJ found that Dixon was not "under a disability," as defined by the Act, see 42 U.S.C.A. § 423(d)(1)(A), from February 1, 1987 until August 31, 1989. (J.A. at 26.) Upon review of Dixon's records, the Appeals Council found no basis for reversing the ALJ's findings that Dixon "retained the residual functional capacity for light work through August 30, 1989." (J.A. at 4).

---

**2** Dixon does not challenge this finding on appeal.

4

III.

Dixon contends that the Commissioner improperly evaluated the medical evidence, in particular, the reports of Ms. Burckhalter, a registered nurse; Dr. Lowdermilk, a Social Security Administration medical consultant; and Drs. Bland and Dees, Dixon's treating physicians.[3] Dixon also claims the Commissioner improperly found that his subjective complaints were not supported by the medical evidence. We address each contention in turn.

A.

Nurse Burckhalter reviewed Dixon's medical records and issued a report dated February 19, 1993, in which she stated that Dixon had been unable to participate in sustained activity since November 4, 1986. Dr. Lowdermilk, a nontreating physician, reviewed Dixon's medical records in March of 1993. He noted that a November 4, 1986, pulmonary function test did not reveal pulmonary obstruction severe enough to meet or equal the impairment listing for"chronic pulmonary insufficiency." See 20 C.F.R. pt. 404, subpt. P, app. 1 § 3.02 (1996). Nevertheless, Dr. Lowdermilk concurred with Nurse Burckhalter and reported that Dixon's "chronic obstructive pulmonary disease" (J.A. at 226), in conjunction with his diabetes and arthritis, significantly reduced Dixon's residual functional capacity to do sustained work activity such that he should be found disabled as of November 4, 1986.

The reports of nontreating physicians, when consistent with the record, can be relied upon by the Commissioner. See Smith v. Schweiker, 795 F.2d 343, 346 (4th Cir. 1986). However, in this case, we hold that the Commissioner did not err in declining to rely on the reports of Dr. Lowdermilk and Nurse Burckhalter. Nurse Burckhalter does not have the necessary expertise to qualify as an "acceptable

---

**3** The medical reports of Dr. Lowdermilk and Nurse Burckhalter were not submitted to the ALJ. However, Dixon submitted them to the Appeals Council, which found that the additional reports contained no findings outweighing the other evidence on the record supporting the ALJ's decision. (J.A. at 4).

source" for medical information. <u>See</u> 20 C.F.R. § 404.1513 (1996).**4** Dr. Lowdermilk conceded that Dixon's pulmonary disease was not sufficiently severe to meet impairment listing for"chronic pulmonary insufficiency." <u>See</u> 20 C.F.R. pt. 404, subpt. P, app. 1 § 3.02 (1996). Both Nurse Burckhalter and Dr. Lowdermilk opined that Dixon should be found disabled as of November 4, 1986, despite the fact that Dixon admittedly worked full-time until the end of January of 1987 and despite the fact that Dixon does not claim that he was disabled until February 1, 1987. Furthermore, there is substantial evidence in the record to contradict the findings in their reports.

B.

We next consider Dixon's treating physicians' reports. Although Dr. Bland was Dixon's primary physician for eighteen years, he ceased treating Dixon in 1985. Because he did not examine Dixon during the period in question, February 1, 1987 through August 31, 1989, the Commissioner did not err in refusing to grant Dr. Bland's opinion the deference generally conferred upon the opinion of a claimant's attending physician. Moreover, although Dr. Bland indicated that he believed Dixon was disabled as of January 30, 1987, he also stated that Dixon was disabled in 1984 and 1985. (J.A. at 117-118.) However, as noted above, Dixon continued to work as a district manager at the insurance company for at least two years longer than Dr. Bland predicted. Furthermore, a closer review of Dr. Bland's report and Dixon's corresponding medical records reveals that Dixon's arthritis and gout were "for the most part, effectively treated" (J.A. at 117), and there is no evidence that his gastrointestinal complaints limited his activities. Also, while Dr. Bland noted Dixon's developing emphysema and shortness of breath, there is no evidence in the record that Dixon had any significant limitations as a result of his pulmonary illness.

Dixon also argues that the Commissioner erred by discounting the opinion of his treating physician, Dr. Dees. Dr. Dees examined Dixon in June and November of 1986 and April 15, 1988. In a May 2, 1988

_____

**4** Nurse Burckhalter's report arguably qualifies as "Information from other sources," <u>see</u> 20 C.F.R. § 404.1513(e)(2) - (3) (1996), and because the Appeals Council considered it, we will also.

6

report, Dr. Dees stated that Dixon "ha[d] been unable to perform [his] current assigned [work] duties since February 1987." (J.A. at 224.) The Commissioner must generally give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(d)(2)(1996). However, the "treating physician's rule," see Coffman v. Bowen, 829 F.2d 514, 517-18 (4th Cir. 1987), does not require that a treating physician's testimony and report be given "controlling weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) ("[I]f a [treating] physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."); see also 20 C.F.R. § 416.927(d)(2) (1996). Moreover, it is the responsibility of the Commissioner, not the appellate court, to review the case, make findings of fact, and resolve conflicts of evidence. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

In this case, the Commissioner did not err in refusing to defer to Dr. Dees' cursory statement that Dixon had been disabled since February 1, 1987, because the record contains substantial medical evidence to the contrary. Several medical reports in the record indicated Dixon was capable of light work from February 1, 1987 until August 31, 1989. Therefore, he was not disabled under the Act. A November 1986 pulmonary evaluation indicated that Dixon had only a mild to moderate obstructive disease that was not severe enough to qualify as a disability under the applicable regulations. As noted, Dr. Bland effectively treated Dixon's gout and arthritis and, although Dr. Dees stated that Dixon was disabled as of February 1, 1987, the Commissioner emphasized that Dr. Dees failed to report any specific limitations in Dixon's performance of his past work prior to August 31, 1989, and failed to mention any complications Dixon may have had as a result of his condition. Cf. Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985) (holding that less weight may be given to the opinion of a treating physician when the diagnosis of disability is brief and conclusory).

The Commissioner cited additional medical evidence to support her finding that Dixon was capable of light work prior to August 31, 1989. When Dixon was hospitalized on January 17, 1987 for a urinary tract infection, numerous tests were conducted. A"normal" chest X-

7

ray revealed no vascular congestion, pneumonic infiltrates, or pleural effusion (J.A. at 160, 163), and an electrocardiogram was "normal" (J.A. at 160). A physical examination of Dixon conducted by Dr. Meehan during the hospitalization showed full-range joint motion and normal motor and sensory functions. Dr. Meehan noted Dixon's generalized decreased breath sounds, but found no shortness of breath and no acute distress. Dixon was alert and oriented, and his deep tendon reflexes were equal bilaterally. In addition to Dr. Meehan's report, the Commissioner cited an October 1989 bronchial washing that revealed no marked abnormalities and a May 1990 chest X-ray that again indicated no acute disease. Furthermore, the Commissioner noted the lack of the "use of accessory muscles for breathing, cyanosis[,] or clubbing of the extremities, irregular heart rate or rhythm, rapid heart beat[,] or frequent emergency room visits or other intensive treatment for acute respiratory problems" from February 1, 1987 until August 31, 1989. (J.A. at 24.) Based on the foregoing conflicting medical evidence and lack of evidence to substantiate a severe impairment prior to August 31, 1989, we find that the weight given to the reports of Nurse Burckhalter and Drs. Lowdermilk, Bland, and Dees was not improper.

C.

Dixon also contends the Commissioner erred in finding that his subjective complaints during the time in question were not supported by medical evidence and, therefore, were not credible. Dixon testified that he quit his job at the end of January 1987 because he was unable to perform his duties due to his breathing problems, gout, and arthritis. Dixon testified that he had to rest at lunch for two to three hours so he could return to work, and that he could walk on only level ground at a slow pace and stand for only 15 minutes before shifting positions. He stated that he could not sit for four hours a day or alternate sitting and standing for eight hours a day, five days a week. Dixon further testified that he could not bend, stoop, or reach over his head. Overall, Dixon stated that he lacked energy and could not sustain activity for a significant amount of time.

Dixon conceded, however, that his job did not require lifting or carrying heavy objects and that he was able to change positions whenever needed. He also reported that his diabetes was under control with

medication, and that he had no significant side effects from his medication. Dixon testified that he often prepared breakfast for him and his wife, washed dishes, mowed the grass with a self-propelled mower, fished twice a month, and attended church and Lion's Club meetings. Therefore, as the Commissioner recognized, Dixon's own testimony indicated he maintained a "fairly active and varied lifestyle [that was] not suggestive of a significant restriction of activities or constriction of interests." (J.A. at 24.) The Commissioner properly considered Dixon's subjective complaints of pain, and her decision to discount those complaints, considering Dixon's admitted activities and submitted medical evidence, did not constitute reversible error. See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (holding that claimant's complaints of pain were undermined by her ability to perform a wide variety of daily tasks).

IV.

We affirm the decision of the Commissioner because it is supported by substantial evidence and is in accordance with the applicable law. There is ample competent medical evidence to support the Commissioner's finding that Dixon could perform light work from February 1, 1987 until August 31, 1989. Therefore, he is not eligible for disability insurance benefits prior to August 31, 1989. Accordingly, we affirm.

AFFIRMED

9